## The George's Creek Coal and Iron Company vs. The County Commissioners of Allegany County.

*Mandamus—Taxes paid under a Mistake of Fact—Duty of County Commissioners under sec. 7, of Art. 28, to provide for the Refunding of Taxes erroneously levied and received—Right of action at law to Recover taxes erroneously paid—What plaintiff in an action under sec. 7, of Art. 28, of the Code, to recover Taxes erroneously paid, would have to show—When Mandamus is the proper Remedy to compel the Refunding of Taxes erroneously paid—Application of the Statute of Limitations by way of analogy.*

The application for a writ of mandamus being addressed to the sound judicial discretion of the Court, all the circumstances of the case must be considered in determining whether the writ should be allowed or not; and it will not be allowed, unless the Court be satisfied that it is necessary to secure the ends of justice, or to subserve some just or useful purpose.

Where taxes have been paid under a mistake of *fact*, the party receiving them is bound to refund, and they may be recovered back in an action for money had and received.

Under section 7, of Article 28, of the Code, it is the duty of the County Commissioners, *when satisfied* that an error has arisen by assessing property not liable to assessment, and that taxes have been paid in consequence of such error, to provide for and refund the taxes thus erroneously levied and received; and under the statute it would make no difference whether the taxes were paid under a mistake of fact or a mistake of law; for in either case the party receiving the taxes would be bound to refund them; and there would be an implied promise raised to pay the amount so received; and upon that implied promise an action for money had and received could be maintained.

In an action under sec. 7, of Art. 28, of the Code, to recover taxes erroneously paid, all that it would be necessary for the plaintiff to show, would be that there had been error in assessing property not liable to assessment, and that he had been required to pay taxes in

George's Creek Coal & Iron Co. *vs.* County Comm'rs of Allegany Co.

consequence of that erroneous assessment; and that the defendants had refused, without legal cause or justification, to levy for the money to refund the taxes so paid.

The remedy by ordinary action at law for the recovery of taxes erroneously paid, being sufficient, the extraordinary process of *mandamus* is not proper to be invoked before judgment recovered in such ordinary action. But after judgment recovered, *mandamus* would be the proper remedy to compel the County Commissioners to levy taxes for its payment.

If the circumstances of the case be such as to justify the allowance of a *mandamus*, and the Statute of Limitations be interposed by the County Commissioners, and it be made to appear that more than three years had elapsed since the payment of the taxes sought to be recovered back, the reason and policy of the statute should be considered, and be allowed application by way of analogy, if not as a technical bar, in determining the question as to the right of the applicant to obtain the benefit of the writ.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*Walter R. Townsend*, and *Julian I. Alexander*, for the appellant.

*Benjamin A. Richmond*, and *William Brace*, for the appellees.

ALVEY, J., delivered the opinion of the Court.

This is an application for a *mandamus* by the appellant against the appellees, to require the latter to levy the sum of $40,100.41, to the use of the former, for taxes alleged to have been erroneously levied and paid. The supposed right to relief is founded upon the Code, Art. 28, sec. 7, which provides that the County Commissioners

shall, "*when satisfied* that *any error* has arisen by assessing property not liable to be assessed, rectify such error and levy *and pay* to the proper person any money that may have been paid in consequence of such error."

By the local law of Allegany County, (Code Local Laws, Art. 1, secs. 160–162,) it was provided that the "incorporated institutions and companies of Allegany County. whether they have or have not declared any dividend or earned any profits, shall pay the State and County taxes levied upon the assessed value of their capital stock, held by stockholders residents or non-residents of said county; but the holders of said stock shall not be liable to taxation upon the stock held by them." Under this provision of the local statute, and without supposing that the same had been repealed by either the general assessment Act of 1866, ch. 157, or that of 1876, ch. 260, the capital stock of the appellant was assessed by the assessors, appointed under the general assessment Acts, in pursuance of the local law, instead of the general assessment law; and the appellant paid the taxes on such capital stock so assessed, from 1867 to 1878, inclusive. But in February, 1880, this Court, in the case of *Alexander vs. The City of Baltimore*, 53 *Md.*, 100, decided that the provision of the local law, before referred to, had been repealed by the provisions of the general assessment Act of 1866, ch. 157, and that, by the latter Act the mode of assessment was quite different from, and inconsistent with, the mode provided in the local law. By the general assessment Acts, both of 1866 and 1876, the shares of the capital stock of all corporations, liable to taxation, were directed to be assessed to the resident holders of such stock in the city or county where the holders resided, and the shares owned by non-residents of the State were directed to be assessed in the city or county where the corporation conducted its business. The aggregate amount of taxes paid, as county taxes, on the whole

capital stock of the appellant, from 1867, to 1878, inclusive, was $52,201.85; of which, it is admitted, the sum of $12,101.44, was in respect of shares held by non-residents of the State, and the remaining sum of $40,100.41, was paid in respect of shares owned by residents of the State, but non-residents of Allegany County; so the appellant alleges that it paid to the county for county purposes, from 1867 to 1878 inclusive, the sum of $40,100.41, in excess of what it was bound or liable by law to pay, and it therefore seeks to have such amount refunded. It is not alleged or claimed, however, that the appellant was assessed or required to pay taxes, in respect either of its property or capital stock, in any other locality of the State, for county or city purposes, during the period from 1867 to 1878; nor is it pretended that the shareholders of the stock were so assessed, or required to pay any taxes whatever on their shares, during that period, for county or city purposes. So that, in fact, the only parties who were in reality prejudiced by the misapprehension as to the state of the law, were the City of Baltimore and the counties where stockholders resided, in failing to get the benefit of the taxes that could have been lawfully assessed upon such shares of stock for local purposes, under the general assessment law.

It is admitted that the appellant made demand upon the appellees for the correction of the erroneous levy and payment of taxes, as provided by the section of the Code already referred to, and that the appellees refused. And in their answer to the application for the *mandamus*, the appellees allege several grounds, and rely upon several defences, against the issue of the writ. Among other defences, they insist that there was ample remedy otherwise provided by law, and therefore *mandamus* is not the appropriate remedy for the enforcement of the alleged right: That the Statute of Limitations is a bar; and if it does not apply in terms, and as a technical defence, it does by way

OCTOBER TERM, 1882.          259

George's Creek Coal & Iron Co. *vs.* County Comm'rs of Allegany Co.

of analogy. That there has been such *laches* in the application as will preclude the appellant: And, taking the more general ground, they insist, that there is no such justice disclosed in the case as will justify the award of the writ, in the exercise of a sound legal discretion.

The case was heard and decided below on an agreed statement of facts; and the judgment of the Court was that the writ be refused and the petition be dismissed.

*Mandamus* is a most valuable and essential remedy in the administration of justice, but it can only be resorted to to supply the want of some more appropriate ordinary remedy. Its office, as generally used, is to compel corporations, inferior tribunals, or public officers to perform their functions, or some particular duty imposed upon them, which, in its nature, is imperative, and to the performance of which the party applying for the writ has a clear legal right. The process is extraordinary, and if the right be doubtful, or the duty discretionary, or of a nature to require the exercise of judgment, or if there be any ordinary adequate legal remedy to which the party applying could have recourse, this writ will not be granted. The application for the writ being made to the sound judicial discretion of the Court, all the circumstances of the case must be considered in determining whether the writ should be allowed or not; and it will not be allowed unless the Court is satisfied that it is necessary to secure the ends of justice, or to subserve some just or useful purpose. 2 *Dill. Mun. Corp.*, sec. 827; *State vs. Graves*, 19 *Md.*, 351, 374; *Booze vs. Humbird*, 27 *Md.*, 1, 4.

Such being the general principles governing the Courts upon these applications, the first question is, whether there was any other specific legal remedy for the recovery of the taxes erroneously levied by the appellees and paid by the appellant, for if there was such remedy, there is no ground for the present application.

It is a well-settled principle, that if a party through some mistake, misapprehension, or forgetfulness, of facts,

receives money to which he is not justly and legally entitled, and which he ought not, *in foro conscientiæ*, to retain, the law regards him as the receiver and holder of the money for the use of the lawful owner of it, and raises an implied promise on his part to pay over the amount to such owner; and if the money be withheld from the owner, an action for money had and received may be maintained. *Kelley vs. Solari*, 9 *M. & W.*, 54; *Balto. & Susq. R. Co. vs. Faunce & Passmore*, 6 *Gill*, 69, 77.

This principle is well illustrated by the case of *Newsome vs. Graham*, 10 *B. & Cr.*, 234. In that case, it appeared that the plaintiff had, from time to time, paid rent to the defendants for certain premises which he held of them; that it afterwards turned out that the defendants had no title; and the plaintiff having been ejected and compelled to pay the mesne profits for the time during which he had held of the defendants, the Court of King's Bench was clearly of opinion that the action for money had and received was maintainable for the recovery back of the rent thus paid the defendants. And many cases might be cited to the effect that where a tax has been paid under a mistake of fact it may be recovered back in an action for money had and received. *Burroughs on Taxation*, 268, 269; *Bank of the Commonwealth vs. City of New York*, 43 *N. Y.*, 184.

But, conceding the action for money had and received to lie for taxes paid under a mistake of fact, it is insisted that no such action could be maintained for the recovery of the money claimed in this case, because here the taxes were paid under a mistake of law. And it is certainly true, as a general principle, according to the decisions of this Court, that where taxes have been paid under a mistake of law, they cannot be recovered back in an action at law. *Lefferman's Case*, 4 *Gill*, 431; *Lester's Case*, 29 *Md.*, 415.

But if the provision of the statute under which the present application is made has the effect, as contended by

George's Creek Coal & Iron Co. *vs.* County Comm'rs of Allegany Co.

the appellant, of making it the plain, imperative duty of the appellees, without regard to the distinction as to whether the taxes were paid under a mistake of law or a mistake of fact, to provide for and repay the taxes that were erroneously received, the appellees would be in no position to urge, as a defence to an action at law, that the taxes had been paid under a mistake of the law, and, therefore, could not be recovered back. All that it would be necessary for the plaintiff to show in such action would be that there had been error in assessing property not liable to assessment, and that the plaintiff had been required to pay taxes in consequence of that erroneous assessment; and that the defendants had refused, without legal cause or justification, to levy for the money to refund the taxes so paid. If, therefore, the statute has created and imposed a clear, positive duty, as we think it has, (where the Commissioners are satisfied of the error,) such as would be required to support this application, to repay the taxes erroneously levied and received, that statute simply operates to change or modify the common law rule that taxes paid under a mistake of law cannot be recovered back. That being so, whether the taxes be paid under a mistake of fact or a mistake of law, would make no difference; for in either case the party receiving the taxes would be bound to refund them; and there would be an implied promise raised to pay the amount so received, and upon that implied promise an action for money had and received could be maintained. And, therefore, inasmuch as the appellant had this plain remedy, by ordinary action at law, which it could have pursued for the recovery of the money, it follows that the extraordinary process of *mandamus* is not proper to be invoked before judgment recovered in such ordinary action. But, after judgment recovered *mandamus* would be the proper remedy to compel the appellees to levy taxes for its payment. 2 *Dill. on Mun. Corp.*, (3rd *Ed.*) sec. 850, and the cases there collected.

Supposing, however, the circumstances of the case to be otherwise such as to justify the allowance of this extraordinary remedy, the question is raised, whether the Statute of Limitations in any form, or lapse of time, can be availed of as a defence. It is admitted that three years had elapsed since the last payment of taxes before this application was made, or before demand was made upon the appellees for repayment. We suppose it to be clear that. if an action of assumpsit had been brought against the appellees to recover the taxes erroneously paid, the Statute of Limitations could have been effectually pleaded,—the right to interpose such a defence being in nowise affected by the statute under which this application is made. There would seem to be great reason, therefore, for giving the statute application in some form; or otherwise the appellees would be entirely deprived of the benefit of a. defence that would be open to them in an ordinary action for the recovery of the money claimed.

We are not called upon, however, to decide, and we are not to be understood as deciding, that the Statute applies. in terms, and as a technical bar, in a case like the present. But we are of opinion that the reason and policy of the statute should be considered, and be allowed application by way of analogy, in determining the question as to the right of the applicant to obtain the benefit of the writ of *mandamus*, in cases circumstanced like the one before us. The authorities would seem to be quite conclusive in support of that proposition.

In the case of *The King vs. The Justices of Lancashire*, 12 *East*, 366, there was an application for a *mandamus* to the justices of the county, commanding them at the next special sessions to be holden within the limits of a certain parish, pursuant to the General Highway Act (13 *Geo.* 3, *ch.* 78,) to cause a rate to be made according to the form and manner therein prescribed, for the re-imbursing J. T. and S. C., the money levied on them for the fine imposed

George's Creek Coal & Iron Co. *vs.* County Comm'rs of Allegany Co.

upon the inhabitants of the parish for the non-repair of the road. A period longer than that prescribed by the Statute of Limitations as a bar to actions of assumpsit was allowed to pass before the application was made, and the writ was denied expressly upon that ground. Lord ELLENBOROUGH, Ch. J., in delivering his opinion, said: "Suppose an action of *assumpsit* could have been brought in such a case for the contributory shares of the other inhabitants, the Statute of Limitations would have run upon it: But if this application be granted, the money must be paid under the rate. The length of time, therefore, which has elapsed, is a sufficient answer to the application, without going more at large into the subject." In this view all the other Judges concurred, and the application was accordingly refused.

And so in the case of *The Queen vs. Halifax Road Trustees*, 12 *Q. B.*, 442. In that case it was said by the Court that, as the writ was not one of right, but of sound judicial discretion, the lapse of time was material when the Court was called upon to exercise a discretion, as to whether the writ should go or not; and the writ was in that case refused, because of the lapse of time. Several other cases are to the same effect, some of which are referred to in the opinion of the Court below, and were cited in the course of the argument at bar. And, applying the principle of those cases, the Court below was fully warranted in refusing the application upon that ground alone.

As we have already stated, the stock of the appellant was not assessed and made liable to taxation in any other part of the State for county or city purposes, from 1866 to 1879; nor was any tangible property owned by it assessed anywhere in the State. The stockholders of the appellant were equally liable to assessment as the stockholders of any of the other corporations in other parts of the State; and, therefore, under the circumstances of the

case, there is no very persuasive equity in favor of the application. It is not the case of a party required to pay taxes upon property wholly exempt from taxation, as in the case of *The People vs. Sup. Otsego County*, 51 *N. Y.*, 401, nor the case of a party by error or mistake paying taxes twice on the same property. It is simply the case of a party paying taxes on its property to the authorities of one locality, by mutual mistake or misapprehension of the law, when that property could, and should, have been assessed and made liable to taxation in different localities of the State, but from which it escaped by reason of such mutual mistake of the parties concerned. It is quite manifest, therefore, that the appellant has suffered no substantial wrong or injustice in fact, by the mistake under which all parties acted.

For the reasons we have stated, the order appealed from, refusing the writ, must be affirmed.

*Order affirmed.*

(Decided 26th January, 1883.)