## TOWN OF DISTRICT HEIGHTS *v.* COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY

[No. 171, October Term, 1955.]

*Decided May 8, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ross G. Porter,* with whom was *Woodrow A. Shriver* on the brief, for appellant.

*Robert B. Mathias,* with whom was *William L. Kahler* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

On October 31, 1955, the Mayor and Town Council of the Town of District Heights, a municipal corporation of the State of Maryland, filed a petition in the Circuit Court for Prince George's County praying for a writ of mandamus to compel the County Commissioners of Prince George's

County to reconsider the 1955 distribution of funds received by the County Commissioners from the Maryland Racing Commission, and to pay to the town its just and proportionate share of the funds computed on the basis of "the best and most reliable figures available."

The allegations in the petition are in substance as follows:

(1) Under the Maryland Racing Commission Act, Code 1951, art. 78B, sec. 19, the several Counties of the State are entitled to a proportionate share of certain revenues collected by the Racing Commission, allocated on the basis of population "according to the latest available Federal census."

(2) The Act provides that from the funds allocated to each County, the County Commissioners shall allocate and pay to each incorporated town in the County a share of such funds in the ratio which the population of the town, "figured on the best and most reliable figures available in the opinion of the County Commissioners," bears to the total population of the County, provided that the town qualifies by meeting the conditions specified in the Act; and the Town of District Heights qualifies under the Act.

(3) The County Commissioners unreasonably, illegally, arbitrarily, and in violation of their duty, failed to allocate and pay to District Heights its proportionate share of the funds from the Racing Commission for the year 1955, as they did not allocate and pay the funds "figured on the best and most reliable figures available," but allocated and paid the funds on the basis of the 1950 Federal Census.

(4) The County Commissioners used the 1950 Census figures because those figures provided a simple and expedient basis for the distribution without reference to the proportionate population of the towns of the County in 1955; and the decision to use the Census figures was based on the opinion of Carl Mace, County Comptroller, and not on the opinion of the County Commissioners.

(5) There are available to the County Commissioners better and more reliable figures of the population of the

County and its incorporated towns, namely, but not restricted to, the 1955 Census Tract prepared by the Maryland National Capital Park and Planning Commission.

(6) Since 1950 the population of Prince George's County has increased from 194,182, according to the 1950 Census, to an estimated 282,374 in April, 1955; and the distribution of the increased population of the incorporated towns has not been uniformly proportionate, and thus they did not have the same ratio of population to the total population of the County in 1955 as they had in 1950.

(7) Between 1950 and 1955 the population of District Heights more than doubled. The Commissioners allocated to it only $2,233.64, which was less than half the amount to which it was entitled.

The County Commissioners demurred to the petition. They alleged as grounds of the demurrer: (1) that the Racing Commission Act authorizes them to distribute the funds to each incorporated town in the ratio which its population bears to the total population of the County, figured on the best and most reliable figures available "in the opinion of the County Commissioners," and thus the Commissioners have full discretion as to what figures to use; (2) that mandamus will not lie to control any discretionary power; and (3) that the Commissioners disbursed the funds on the basis of the 1950 Census, which was the same basis used by the State in making its apportionment to the County; and there is no legal duty on the part of the Commissioners to disburse to the towns on the basis of the Census Tract prepared by the Maryland National Capital Park and Planning Commission.

The Court sustained the demurrer without leave to amend, and ordered the costs to be paid by petitioners. From that judgment petitioners appealed to this Court.

The Legislature has prescribed the procedure to be followed upon applications for mandamus. The statute expressly provides that upon the filing of a petition for mandamus, the court or judge to whom the same is addressed shall lay a rule requiring the defendant to show cause why a writ of man-

damus should not issue as prayed; and the defendant, by the day named in the order, shall file an answer to the petition, fully setting forth all the defenses upon which he intends to rely in resisting the application, which shall be verified by his affidavit. Laws 1858, ch. 285, Code 1951, art. 60, secs. 2, 3.

It has been held by this Court that although the statute prescribing the procedure in mandamus proceedings does not state that the defendant may file a demurrer to a petition for mandamus, the defendant is not deprived of the right to demur, but he may bring up for hearing on demurrer a case in which it appears on the face of the petition that the petitioner is not entitled to the relief prayed. *Brack v. Bar Ass'n of Baltimore City, Inc.,* 185 Md. 468, 472, 45 A. 2d 102; *Mahoney v. Board of Supervisors of Elections of Queen Anne's County,* 205 Md. 325, 332, 108 A. 2d 143.

The law is plain that the courts have the inherent power, by mandamus, injunction, or otherwise, to review the action of administrative boards and to correct any illegal or arbitrary acts or abuses of discretion which impair personal or property rights; but the courts cannot interfere with the exercise of lawful administrative discretion. *Walter v. Board of County Com'rs of Montgomery County,* 179 Md. 665, 22 A. 2d 472; *Hecht v. Crook,* 184 Md. 271, 40 A. 2d 673; *Heaps v. Cobb,* 185 Md. 372, 45 A. 2d 73; *Masson v. Reindollar,* 193 Md. 683, 689, 69 A. 2d 482.

However, mandamus, while resembling in some respects a decree in equity for specific performance, is a common-law process issued for the special purpose indicated in the writ, and the relief prayed cannot be modified according to circumstances, such as under a prayer for general relief in a bill in equity. The writ of mandamus depends upon the facts, circumstances, and conditions existing at the time the petition for mandamus is filed. As the object of the granting of a writ of *mandamus* is to prevent a failure of justice and to provide an immediate and effective remedy, it is consistently held, in accordance with the maxim *"lex non cogit inutilia,"* that the writ will not be granted if it would be nugatory, or

where it would demand an abstract right but not subserve any just or useful purpose. *State v. Graves,* 19 Md. 351, 374; *Booze v. Humbird,* 27 Md. 1, 4; *Kinlein v. Mayor and City Council of Baltimore,* 118 Md. 576, 85 A. 679; *Schriver v. Mayor and City Council of Cumberland,* 169 Md. 286, 181 A. 443; *Eck v. State Tax Commission,* 204 Md. 245, 103 A. 2d 850; *Mahoney v. Board of Supervisors of Elections of Queen Anne's County,* 205 Md. 325, 335, 108 A. 2d 143.

A case in point is *Board of Com'rs of Public Schools of Allegany County v. Allegany County Com'rs,* 20 Md. 449, 460. In that case the School Commissioners petitioned the Circuit Court for Allegany County for a writ of mandamus to require the County Commissioners to levy the sum of $10,000 for the support of the public schools for the year ending July 1, 1861, and also the amount which might be estimated by the School Commissioners to be needed for the year ending July 1, 1862. The petition was dismissed, and in the opinion of the Court of Appeals affirming that action, Chief Judge Bowie said:

> "The relief prayed, is both prospective and retrospective. The appellants anticipate, because the County Commissioners *have* refused to assess the sum estimated and reported in the year 1861, they *will* refuse to assess that which might be estimated and reported in the year 1862, and pray a *mandamus* to compel the appellees to do an act which they had not refused to do. However natural and strong the presumption, that the appellees would refuse in the then current year, to levy the sum to be estimated, as they had done in the year preceding, to levy the sum estimated and reported, this court cannot act upon such presumptions.
>
> \*    \*    \*    \*    \*    \*
>
> "The other aspect of the prayer, requires a *mandamus* to enforce a levy for a past year, which the law requires to be assessed within certain definite periods then passed. The estimates, it has been seen, were required by law to be annual, and the

levies to be annual. Is it competent for a judicial tribunal, to direct a Board of Commissioners to impose a tax for special or particular purposes after the time prescribed by law? This question occurred very early in our judicial history, and was decided adversely to the petitioner, a decision which has been generally acquiesced in ever since."

In the petition filed in the instant case, the Mayor and Town Council of District Heights alleged that the County Commissioners had already allocated and paid the funds received from the Racing Commission for the year 1955 to the incorporated towns of the County. It was also conceded by counsel at the hearing in the Court of Appeals that these funds had been distributed.

As issuance of a writ of mandamus would be nugatory, the Court below acted properly in sustaining the demurrer to the petition.

*Judgment affirmed, with costs.*